**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| IN RE SUBPOENA OF NON-PARTY JOE WALSH | : | Case: |
| | : | Assigned To: |
| | : | Assign. Date: |
| | : | Description: |

## DEFENDANTS' EMERGENCY MOTION TO COMPEL THE DEPOSITION OF JOE WALSH ON SEPTEMBER 16, 2016

### Introduction

This is now the second time this matter appears before this Court. On August 5, 2016, hibu Inc. served a third-party subpoena on Joseph Walsh, seeking to compel production of documents and testimony on August 17, 2016. On August 12, 2016, Mr. Walsh filed a Motion to Quash the subpoena with this Court. On August 15, 2016, Mr. Walsh withdrew his Motion to Quash based on an agreement among the parties that Mr. Walsh would appear and testify at one of several dates his counsel provided.

Since that time, however, Mr. Walsh has attempted to go back on this agreement by refusing to appear on any of the six dates his counsel originally represented were available. Mr. Walsh claims he is now not available until October. The reason for Mr. Walsh's change in course is obvious: on September 21 hibu must submit a joint pre-trial memorandum in the underlying litigation titled *McCusker v. hibu plc, et. al.*, E.D.N.Y. Case No. 2:15-cv-02659-LDW-GRB ("EDNY Litigation"). Mr. Walsh – who, as discussed in more detail below, is closely aligned with the Plaintiff James McCusker in the EDNY Litigation – seeks to delay his deposition to after this deadline in order to deprive hibu of the opportunity to designate testimony or identify exhibits from him that hibu intends to use at trial. Underscoring Mr. Walsh's bad-faith in seeking to postpone his deposition is the fact that hibu represented it would

agree to an October date for Mr. Walsh's deposition provided that Mr. Walsh and Mr. McCusker request permission from the EDNY Court to supplement the pre-trial memorandum with any information learned from Mr. Walsh's subsequent deposition. But Mr. McCusker's counsel refused to agree to this plan, thereby confirming Mr. McCusker's and Mr. Walsh's coordinated strategy has nothing to do with Mr. Walsh's professed and sudden lack of availability, but is rather intended to prejudice hibu in the EDNY Litigation.

That Mr. Walsh seeks to undermine hibu in the EDNY Litigation comes as no surprise given that he played a key role in the underlying dispute and his allegiance clearly lies with the Plaintiff in that matter. Until his termination in October 2011, Mr. Walsh served as CEO of hibu Inc. predecessor, Yellow Book USA, Inc. (which subsequently was renamed Yellowbook Inc.). During the end of his tenure and subsequent to his departure, Mr. Walsh made several attempts to buy hibu's U.S. business. Having his initial attempts rejected, Mr. Walsh began colluding with and directing Mr. McCusker, who still worked at hibu, in a scheme to undermine hibu[1/] and its leadership. Mr. Walsh and Mr. McCusker orchestrated this plot to undermine hibu's leadership during a critical time in hibu's history so that Mr. Walsh could purchase hibu's assets in the United States for a fire-sale price. hibu discovered Mr. McCusker's disloyal conduct and terminated his employment.

These events form the nexus for the EDNY Litigation.[2/] Since August 5, 2016 (now more than a month ago), hibu attempted to secure Mr. Walsh to sit for a deposition and produce

---

1/ Until late 2013, hibu plc was the parent company of hibu Inc., a print and digital media business located in King of Prussia, Pennsylvania. For ease of reference, Defendants will refer to hibu Inc., hibu plc, and any predecessor entities as "hibu," except where the distinction between the entities is relevant.

2/ A companion case to the EDNY Litigation proceeded between Defendants and Mark Cairns, another hibu employee terminated along with Mr. McCusker, in the United States District Court for the Eastern District of Pennsylvania. *See Cairns v. hibu plc, et. al.*, E.D. P.A. Case No. 2:14-cv-05671 (the "EDPA Litigation"). Given the similarly of facts, issues, and potential witnesses between the EDPA Litigation and the EDNY Litigation, counsel for Mr. Cairns (who also serves as counsel for Mr. McCusker ) agreed with hibu's counsel that parties to both actions may use discovery interchangeably (as appropriate).

relevant documents. Mr. Walsh, hibu's former CEO and now the CEO for its chief competitor, Dex Media ("Dex"), is a critical witness in the EDNY Litigation. All parties identified him on their initial disclosures as a person likely to have discoverable information. He orchestrated the plot that led to Mr. McCusker's termination from hibu for cause. And he even injected himself into the related EDPA Litigation by filing an affidavit in support of Mr. Cairns, the plaintiff in that action. In none of the communications to date has Mr. Walsh sought to minimize his importance or involvement to this litigation.

## I. BRIEF FACTUAL AND PROCEDURAL SUMMARY OF THE EDNY LITIGATION

Mr. McCusker claims that Defendants wrongfully denied him severance and defamed him in connection with his termination (Plaintiff's Complaint). Defendants, however, deny Mr. McCusker's claims, because, *inter alia*, Mr. McCusker's termination was for cause and Defendants' statements about his termination were truthful in that Mr. McCusker participated in a secret plot against hibu intended to undermine then CEO Michael Pocock and hibu's Board of Directors, and to shake the faith of hibu's employees, investors and creditors – all with the goal of allowing Mr. Walsh to acquire hibu at a low-ball price. (*See* Exhibit A, February 12, 2013 e-mail from Richard Hooper to Mike Pocock (hibu_JM_000053).)

### 1. Factual Context for the EDNY Litigation.

As part of its defense in the EDNY Litigation, hibu will show that in February 2013, it received an email from a credible source, who wished to remain anonymous, that Mr. McCusker and Mark Cairns, then President of hibu Inc. and Head of US and UK Operations at hibu, respectively, were involved in conspiracy with Mr. Walsh, hibu's former CEO, whom hibu had terminated in the fall of 2011. This campaign, led by Mr. Walsh, sought to undermine the leadership of Mr. Pocock and hibu's Board of Directors. *Id.* Mr. Walsh embarked on this

campaign to accomplish his long-standing goal of acquiring hibu's U.S. business – something he had previously attempted to do on several prior occasions. Mr. Walsh used Mr. McCusker and other hibu employees still loyal to him to assist him with achieving this goal. *Id.*

hibu commenced an investigation that uncovered numerous phone calls between Mr. Walsh, Mr. McCusker and others around the time of critical hibu business and strategy meetings. (*See* Exhibit B, April 4, 2016 Affidavit of Malcolm Green, at ¶ 5 and Exhibit A thereto.) In fact, a later investigation uncovered multiple voicemails left by Mr. Walsh on Mr. McCusker's hibu mobile phone number, including a voicemail wherein Mr. Walsh instructed Mr. McCusker to "put together as many of our leaders as we can and have them maul these people" by getting "30, 50, 70" hibu employees to tell hibu's investors that they "cannot work another day for Mike Pocock." (*See id.* at ¶ 8 and Exhibit E thereto.)[3/] Following the execution of this plan, Walsh left a voicemail for Mr. McCusker stating that "[Mr. McCusker's] letters [to hibu's lenders] are working." (*See* Exhibit C, Transcript of February 7, 2013 voicemail from Joe Walsh to James McCusker.)

When hibu confronted Mr. McCusker with evidence unearthed during its investigation, he failed to provide any legitimate explanation, thereby providing further support for hibu's conclusion that he had engaged in gross misconduct (*i.e.*, disloyal conduct intended to harm hibu's business and undermine leadership). Accordingly, hibu terminated Mr. McCusker's employment "for cause." Pursuant to Mr. McCusker's employment agreement, which excluded the payment of severance in the event of Mr. McCusker's gross misconduct, hibu did not pay Mr. McCusker any severance. Because of Mr. McCusker's senior position on the leadership team of hibu Inc. and to prevent such other employees from engaging in similar disloyal conduct,

---

3/ A USB drive with the audio file from this voicemail and the voicemail referenced in Exhibit C, *infra*, is included in this hand-delivered filing.

Mr. Pocock sent a company-wide email informing all employees of the general nature of the termination.

**2. <u>Relevant Procedural History</u>**

Mr. McCusker commenced the EDNY Litigation on October, 3, 2014. On January 12, 2016, the EDNY Court entered a Scheduling Order providing that August 17, 2016 would be the discovery cut-off date. (*See* Exhibit D.) This same order required submission of a joint-proposed pretrial order conforming to the EDNY Court's requirements by September 21, 2016. *Id.* Pursuant to the Court's requirements, this joint submission must include, for example, deposition designations, exhibit lists and witness lists. (*See* Exhibit E, Individual Motion Practice and Rules for Judge Leonard D. Wexler.)

The parties engaged in extensive and diligent discovery in the United States and United Kingdom over this past year. During discovery, all parties identified Mr. Walsh as a person likely to have discoverable information in their initial disclosures. (*See* Exhibit F, Plaintiff's initial disclosures and Defendants' initial disclosures.) In addition, in the EDPA Litigation, the companion case to this matter (where a settlement is pending), Mr. Walsh submitted an affidavit under the pains and penalties of perjury in support of one of Mr. Cairns' positions. (*See* Exhibit G, April 25, 2016 Affidavit of Joe Walsh, filed in the EDPA Litigation as Exhibit L to Plaintiff Mark Cairns' Opposition to Defendants' Motion for Summary Judgment.) Indeed in that affidavit, Mr. Walsh admits that he enjoyed a "close working relationship" with Mr. Cairns after he left hibu and that he made a bid to purchase the United States assets of hibu. *Id.*

Given Mr. Walsh's status as a ring-leader to the consortium involving Mr. Cairns and Mr. McCusker and his relevance as a witness with knowledge vital to hibu's defenses in this action, hibu served a subpoena on Mr. Walsh on August 5, 2016 at his place of work at Dex, in Dallas,

Texas (the "Original Subpoena").[4/] (*See* Exhibit H, hibu's Subpoena to Joe Walsh and Affidavit of Service thereof.) The Original Subpoena called for Mr. Walsh to produce documents. It also called for Mr. Walsh to appear at Defendants' counsel's office in Washington, D.C. on August 17, 2016 (the last day for discovery in the EDNY Litigation) for a deposition because Defendants had reason to believe that Mr. Walsh's primary residence is an estate located in Potomac, Maryland.[5/]

In addition, hibu's counsel emailed the Original Subpoena to Mr. Walsh's counsel, Brian Jorgensen, on August 9, 2016. (*See* Exhibit J, August 9, 2016 e-mail from B. Cohen to B. Jorgensen.) This same day, August 9, 2016, Mr. Jorgensen emailed a letter to hibu's counsel, confirming his representation of Mr. Walsh, but indicating he intended to move to quash the Original Subpoena. (Exhibit K, August 9, 2016 Letter from B. Jorgensen.) Despite a series of accommodations designed to alleviate any purported burden upon Mr. Walsh, Mr. Jorgensen filed a motion to quash the Original Subpoena on August 12, 2016 ("Motion to Quash"), which was assigned to this Court. (Exhibit L, Walsh Motion to Quash). The Motion to Quash argued that *inter alia*, Mr. Walsh was unavailable on August 17 (but did not state the reason for his unavailability); that the Original Subpoena motion did not provide Mr. Walsh sufficient time for compliance; and that it represented an unreasonable and undue burden upon Mr. Walsh. *Id*; *see In re. Subpoena of Non-Party Joe Walsh*, 1:16-mc-01719.

In a further attempt to accommodate Mr. Walsh and avoid any unnecessary motion practice, hibu agreed to seek permission from the EDNY Court to depose Mr. Walsh after the August 17, 2016 discovery cut-off date if Mr. Walsh would agree to make himself available for a

---

4/ Dex is one of hibu's chief competitors. Mr. Walsh serves as the CEO of Dex, while both Mr. McCusker and Mr. Cairns now work as senior executives at Dex who report to Mr. Walsh.

5/ According to Google Maps, Mr. Walsh's residence at 11600 Partridge Run Lane, Potomac, Maryland is located 18.7 miles from Mintz Levin's Washington, D.C. office. (*See* Exhibit I, Google Maps Graphic of Distance from 11600 Partridge Run Lane, Potomac, MD to 701 Pennsylvania Avenue Northwest #900, Washington, DC.)

deposition and withdraw his Motion to Quash. On Monday, August 15, 2016, and in furtherance of this agreement, Mr. Walsh's counsel provided dates when Mr. Walsh would agree to sit for a deposition, (*see* Exhibit M, August 15, 2016 e-mail from B. Jorgensen), and hibu obtained permission from the EDNY Court to take Mr. Walsh's deposition after August 17, 2016. (*See* Exhibit N.)

Unfortunately, this is when the games by Mr. McCusker and Mr. Walsh began. On Wednesday, August 17, hibu's counsel selected September 1, which was one of the dates provided by Mr. Walsh's counsel, for Mr. Walsh's deposition. Mr. McCusker's counsel then stated that this date would not work for them. In response to a question as to what dates did work for Mr. McCusker's counsel, they responded that September 12 and September 16 – two of the other original dates provided by Mr. Walsh's counsel – would work for them. (*See* Exhibit O, August 17, 2016, e-mail from D. Weiss to B. Cohen.)

On Friday, August 19, 2016, hibu's counsel emailed Mr. Walsh's counsel, and confirmed that the parties were in agreement that Mr. Walsh's deposition would proceed on September 16, 2016. Mr. Walsh's counsel then re-confirmed that that date would work for Mr. Walsh. (*See* Exhibit P, August 19, 2016 e-mail from B. Leone-Quick to B. Jorgensen.) Later that day, however, Mr. McCusker's counsel retracted their prior agreement to proceed with Mr. Walsh's deposition on September 16. (*See* Exhibit Q, August 19, 2016 e-mail from C. Haines to B. Leone-Quick.)

On Monday, August 22, hibu's counsel asked Mr. McCusker's counsel to identify dates when he was available for Mr. Walsh's deposition. In response, Mr. McCusker's counsel refused to provide any dates and further stated that he now objected to Mr. Walsh being deposed after the August 17, 2016 discovery cut-off, despite the fact that he had previously joined hibu in

moving the EDNY Court for this relief, and despite the EDNY Court's order providing for this relief. (*See* Exhibit R, August 22, 2016 e-mail from C. Haines to B. Leone-Quick.)

On Wednesday, August 24, and in light of Mr. McCusker's counsel's refusal to provide *any* dates when he was available to attend Mr. Walsh's deposition, hibu's counsel sent a revised subpoena to Mr. Walsh's counsel (who had agreed to waive service) with a return date of September 16, 2016 ("September 16 Subpoena"), which was one of the dates Mr. Walsh originally provided; was one of the dates Mr. McCusker's counsel originally said would work for them; and was reconfirmed by Mr. Walsh's counsel on Friday, August 19 as a date when Mr. Walsh would appear.

On August 25, 2016, and only after receiving the September 16 Subpoena, Mr. Walsh's counsel claimed for the first time that Mr. Walsh was no longer available on September 16. He did provide any reasons as to why he was unavailable. Instead, he simply provided several dates in October when Mr. Walsh would be available for a deposition. hibu's counsel responded the next day, indicating that a later deposition date would cause too much prejudice to hibu for several reasons, including the fact that the testimony would be critical for the pending EDPA Litigation, which was scheduled to start trial on September 19. hibu's counsel also asked Mr. Walsh's counsel to provide a new list of dates when Mr. Walsh was available prior to September 16, if that date truly no longer worked. (*See* Exhibit S, August 26, 2016 e-mail from B. Leone-Quick to B. Jorgensen.) But Mr. Walsh's counsel did not provide any other dates. Instead, Mr. Walsh's counsel emailed hibu's counsel on August 31, 2016, stating that there was "no need to proceed prior to September 16" because of a pending settlement in the EDPA Litigation. (Exhibit T, August 31, 2016 e-mail from B. Jorgensen to B. Leone-Quick.)

On August 31, 2016, hibu's counsel explained that the settlement in the EDPA Litigation did not remove any exigency with respect to taking discovery from Mr. Walsh because of the pending September 21, 2016 due date for the pre-trial memorandum in the EDNY Litigation, and that anything after September 16 would again cause too much prejudice for hibu. On September 1, 2016, hibu's counsel – still trying to negotiate a solution that would work for all parties – suggested that Mr. McCusker's counsel prepare a joint motion seeking permission of the Court for the parties to supplement their pre-trial order seven days after deposing Mr. Walsh and receiving his documents. Mr. McCusker's counsel rejected this proposed solution and re-affirmed his position that he would challenge any attempt to proceed with Mr. Walsh's deposition after August 17. (Exhibit U, September 1, 2016 e-mail from C. Haines to B. Leone-Quick.)

On this same day, September 1, 2016, counsel for Mr. Walsh confirmed that he had received Mr. Walsh's witness fee and that he agreed to accept service of the September 16 Subpoena on behalf of Mr. Walsh. (Exhibit V, September 1, 2016 e-mail from B. Jorgensen to B. Leone-Quick.) Mr. Jorgensen further stated, however, that he reserved his right to "object to the [subpoena] and file a motion to quash for any reason, other than technical service issues, including but not limited to the fact that Mr. Walsh is no longer available on September 16." (*Id.*) This communication again failed to provide a reason as to why Mr. Walsh was no longer available on September 16. (*Id.*) hibu's counsel responded that absent Mr. McCusker's counsel agreeing to and assisting in seeking relief from the September 21, 2016 deadline from the EDNY Court, the deposition of Mr. Walsh must proceed on September 16, 2016 (or virtually any date before September 16, 2016 at virtually any location). (Exhibit W, September 1, 2016 e-mail from B. Leone-Quick to B. Jorgensen.)

To date, Mr. Walsh's counsel has not explained why Mr. Walsh is no longer available on September 16 or why he refused to provide any other prior dates in September when Mr. Walsh would have been available. Exacerbating this situation is the fact that this is not the first time Mr. Walsh has played games to avoid being deposed by hibu.[6/] In addition, and given the pending deadline in the EDNY Litigation, hibu cannot wait any longer and risk Mr. Walsh moving on the eve of September 16 for a protective order, and – at this juncture – cannot take the risk that the EDNY Court will deny any motion (which Mr. McCusker's counsel has said he would oppose) to supplement the pre-trial memorandum after Mr. Walsh's deposition.

## II. ARGUMENT

Fed. R. Civ. P. 45 allows a party to subpoena non-parties for depositions and document production. Fed. R. Civ. P. 45(c)(1)-(2). Parties may serve such subpoenas to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1); *FTC v. Staples, Inc.*, 2016

---

[6/] Mr. Walsh's sudden, suspect, and suspiciously vague unavailability represents merely the latest chapter in in his efforts to avoid being deposed by hibu, his former employer, about harm he has inflicted on hibu since his departure. In the matter of *hibu Inc. v. John Wholey and Dex Media, Inc.*, Case No. 2014-31910, filed in the Court of Common Pleas of Montgomery County, Pennsylvania, Mr. Walsh first began his deposition-avoidance subterfuge. Despite a court order requiring Mr. Walsh to appear for deposition within 40 days of December 11, 2014, Mr. Walsh avoided hibu's repeated attempts to take his deposition on January 16, 2015, then February 11, 2015, and finally on April 7, 2015. As with the instant matter, hibu engaged in multiple good faith discussions to accommodate Mr. Walsh's schedule, but Mr. Walsh ultimately forced hibu to compel his appearance at a deposition.

To accommodate Mr. Walsh's schedule, hibu first agreed to take Mr. Walsh's deposition on February 11, 2015 in Dallas, Texas, where Dex is based. On February 9, 2015, after hibu's counsel had flown from Boston to Dallas to take Mr. Walsh's deposition, Mr. Walsh's counsel informed hibu's counsel that Mr. Walsh needed to start the deposition 2.5 hours late because of "scheduling reasons." Before hibu's counsel responded, less than two hours later, Mr. Walsh's counsel left a voicemail for hibu's counsel cancelling the deposition because Mr. Walsh suspiciously now had the flu. In none of the prior communications was there any mention that Mr. Walsh was sick, let alone had the flu. Nonetheless, hibu agreed to reschedule Mr. Walsh's deposition and asked Dex's counsel for new dates.

Mr. Walsh then provided two dates for his deposition, yet these dates did not work for hibu, as the parties previously scheduled two other depositions that same week in the same case. After receiving no response to their communications, hibu served deposition notices giving Mr. Walsh the option of appearing on March 11th or 20th for a deposition. Mr. Walsh, in turn, offered April 17, 2015 as the only available date, claiming that his schedule had "filled up quickly" – a claim similar to the one he has made in the instant matter.

U.S. Dist. LEXIS 49965, at *3 (D.D.C. Feb. 26, 2016) ("The standards under Rule 26 apply to subpoenas served under Rule 45."); *see generally Coleman v. District of Columbia*, 275 F.R.D. 33, 36 (D.D.C. 2011) (stating that the scope of Rule 45 subpoenas is governed by Rule 26). The relevance of discovery sought pursuant to a Rule 45 subpoena is broadly construed, and such discovery need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1); *Ecomission Solutions, LLC v. CTS Holdings, Inc.*, 2016 U.S. Dist. LEXIS 114919, at *3 (D.D.C. Aug. 26, 2016) ("Limiting discovery and quashing subpoenas pursuant to Rule 26 and/or Rule 45 goes against courts' general preference for a broad scope of discovery") (internal quotations omitted); *FTC v. Staples, Inc.*, 2016 U.S. Dist. LEXIS 49965, at *5 ("Relevance is broadly construed and discovery need not be admissible to be discoverable."). Moreover, the policy favoring broad discovery under Rule 26 is especially applicable when the court making the relevance determination "has jurisdiction only over the discovery dispute, and hence, has less familiarity with the intricacies of the governing substantive law than does the court overseeing the underlying litigation." *Ecomission Solutions, LLC*, 2016 U.S. Dist. LEXIS 114919, at *3 (internal quotations omitted).

**A. Mr. Walsh's Sudden Lack of Availability is a Pre-Text Advanced in Bad-Faith.**

After 32 days of protracted negotiations with two different sets of counsel, and a looming September 21, 2016 deadline for submission of a pre-trial order in the EDNY Litigation, Mr. Walsh's chief argument for avoidance of his deposition is that he is unavailable to sit for a deposition on September 16, 2016. At no point in this ever-evolving series of discovery epistles has counsel for Mr. Walsh indicated *why* Mr. Walsh is unavailable on September 16, 2016—this is telling.

The record is clear that Mr. Walsh's purported lack of availability is simply a pre-text for attempting to push the deposition into October, thereby prejudicing hibu's ability to include information learned from Mr. Walsh in its pre-trial memorandum in the EDNY Litigation. First, Mr. Walsh's sudden lack of availability on September 16 (or on any other day before the September 21, 2016 pre-trial order deadline) without any explanation is – standing alone – highly suspect. Specifically, between August 19, 2016—when counsel for Mr. Walsh reconfirmed Mr. Walsh's availability for a September deposition—and August 25, 2016—when Mr. Walsh suddenly became unavailable—only two things happened: (1) Mr. McCusker's counsel stated he objected – despite his prior agreement – to taking Mr. Walsh's deposition after the discovery cut-off, and (2) hibu's counsel served the September 16 Subpoena upon Mr. Walsh's counsel.

Second, Mr. Walsh's refusal to provide any other dates prior to September 16 when he was free, despite previously identifying five such dates, indicates that Mr. Walsh is seeking to delay his deposition for purely strategic objectives aimed at prejudicing hibu. Significantly, Mr. Walsh's counsel never represented that Mr. Walsh was no longer free on any date prior to September 16 (in fact, such a statement would be implausible on its face). Rather, he has simply refused to provide any such dates when Mr. Walsh is available.

Third, and perhaps most tellingly, Mr. McCusker's counsel, who is obviously coordinating and acting in concert with Mr. Walsh's counsel on this issue, refused hibu's proposal to seek an order allowing the parties in the EDNY Litigation to subsequently supplement their pre-trial memorandum with any information learned from Mr. Walsh. This solution was specifically proposed by hibu's counsel as a way of allowing the deposition to

proceed in October without working any potential prejudice on hibu. The refusal to seek such relief demonstrates that their intent is to try and prejudice hibu through a delayed deposition.

Just as Mr. McCusker and Mr. Walsh colluded to undermine Defendants when Mr. McCusker still worked at hibu, every indication suggests that counsel for Mr. Walsh and Mr. McCusker have collaborated in a coordinated parlor game, aimed at avoiding Mr. Walsh's deposition at all costs.

**B. <u>A Busy Schedule is Not a Basis for Avoiding the Subpoena.</u>**

Even assuming that Mr. Walsh suddenly and legitimately did become busy on September 16 and was also too busy on every earlier day in September (despite previously representing that he was available), such a busy schedule will not excuse Mr. Walsh from complying with the subpoena. "A party is entitled to depose a witness on all relevant issues as to which the witness has knowledge…the fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery." *CBS, Inc. v. Ahern*, 1984 U.S. Dist. LEXIS 14957, at *4 (S.D.N.Y. Jul. 13, 1984) (granting motion to compel deposition). *See also Walker v. Gusman*, 2015 U.S. Dist. LEXIS 157923, at *5 (E.D. La. Nov. 23, 2015) (granting motion to compel deposition and rejecting witness' argument that he was too busy to appear for deposition); *Naftchi v. New York Univ. Med. Ctr.*, 1997 U.S. Dist. LEXIS 5341, at *5 (S.D.N.Y. Ap. 11, 1997) (stating that the fact that a proposed witness is a "busy person" is not grounds for granting a motion for protective order barring the deposition of the witness).

Indeed, this is particularly so, where Mr. Walsh cannot provide the requisite extraordinary circumstances necessary to excuse him from testifying under oath on September 16, 2016. *See Alexander v. FBI*, 1998 U.S. Dist. LEXIS 11487, at *10-12 (D.D.C. Jun. 15, 1998) (denying non-party's motion to quash subpoena for his deposition where he did not show

the requisite "extraordinary circumstances" to avoid appearing for deposition); *In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 89981, at *14 (E.D. Pa. Jul. 1, 2014) (finding no undue burden on non-party witness where "[b]eyond his busy work schedule, he offers no other reason for preferring not to appear for a deposition."). It is simply implausible that Mr. Walsh faced sufficiently extraordinary circumstances making him unavailable for a deposition at any time prior to September 16 – especially in light of his counsel's prior representations that he was available on several such days.

### C. Given Mr. Walsh's Central Role in the Underlying Dispute between the Parties and the Substantial Notice Provided to Him, This Court Should Reject Any Argument by Mr. Walsh About "Burden" and the Time Provided for Him to Comply with the September 16 Subpoena.

As set forth above, hibu has the right to take third-party discovery in order to defend itself against the claims asserted against it by Mr. McCusker in the EDNY Litigation. hibu has followed all of the rules in seeking third-party discovery from Mr Walsh. hibu has also gone out of its way to provide numerous concessions to alleviate any burdens on Mr. Walsh, including offering to take Mr. Walsh's deposition anywhere in the country most convenient for him, offering numerous dates when they could take the deposition, procuring an order from the EDNY Court to allow Mr. Walsh's deposition to occur after August 17, 2016, and extending professional courtesies to try and work out a solution.

In light of this context, this Court should not entertain any attempts by Mr. Walsh to quash the subpoena on the grounds of burden.

For example, authority that Mr. Walsh previously cited to this Court establishes that the 23 days provided by hibu for Mr. Walsh to comply with the subpoena is presumptively reasonable. *See In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address*

*69.120.35.31*, 2010 U.S. Dist. LEXIS 40653, at *18 (E.D.N.Y. Feb. 5, 2010) (finding 14 days presumptively reasonable).

Indeed, the only feature, which changed between the Original Subpoena (served on August 5, 2016)[7/] and the September 16 Subpoena, served on August 24, was the date for compliance. (*See* Exhibit X, August 24, 2016 Subpoena to Joe Walsh.) Accordingly, Mr. Walsh actually had as much as 42 days' notice of hibu's intent to seek discovery from him.

In addition, neither the Original Subpoena nor the September 16 Subpoena should come as a surprise to Mr. Walsh. As described above, Mr. Walsh, as the architect of the information warfare campaign against hibu, has intimate knowledge of facts relevant to the dispute between the parties and material relevant to the defenses against Mr. McCusker's claims. *See Staples, Inc.*, 2016 U.S. Dist. LEXIS 49965, at *5 ("[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case... Relevance is broadly construed and discovery need not be admissible to be discoverable."). Mr. McCusker's disclosure of Mr. Walsh as a potential witness and Mr. Walsh's submission of an affidavit in the EDPA Litigation highlights this knowledge. Moreover, it cannot be disputed that Mr. Walsh and his personal counsel are extremely knowledgeable about and have closely monitored the EDNY Litigation.

As set forth above, hibu made numerous concessions that it was not required to make in order to accommodate Mr. Walsh and alleviate any conceivable burden imposed by the September 16 Subpoena. For example, with respect to the documents hibu has requested that Mr. Walsh produce, hibu has made it clear to Mr. Walsh that it will accommodate him with respect to such a production, and have offered to talk on the phone to resolve any issues Mr.

---

7/ Mr. Walsh attempted to claim he only received nine days' notice of the Original Subpoena because he received a copy of the subpoena on Monday, August 8 (although his Affidavit contends that Monday was actually August 9).

Walsh could have with the document requests. (*See, e.g.*, Exhibit Y, August 10, 2016 letter from B. Cohen to B. Jorgensen regarding document production; August 17, 2016 e-mail from B. Leone-Quick to B. Jorgensen; August 24, 2016 follow up e-mail from B. Leone-Quick to B. Jorgensen.)

## CONCLUSION

Accordingly, hibu request that this Court order Mr. Walsh's deposition to proceed on September 16, 2016, unless—before that date—Mr. Walsh agrees to a mutually convenient date before September 16 upon which he will comply with the September 16 Subpoena. hibu also respectfully requests the costs and reasonable attorneys' fees incurred in moving to compel Mr. Walsh' compliance. As set forth above, Mr. Walsh has resisted the subpoena in bad-faith and in an attempt to prejudice hibu in the EDNY Litigation.

## REQUEST FOR ORAL HEARING

Pursuant to Local Rule 7(f), Defendants hereby respectfully request an oral hearing on this motion.

## LOCAL RULE 7(M) CERTIFICATION

Pursuant to Local Rule 7(m), I hereby certify that the undersigned have conferred with counsel for Mr. Walsh in an attempt to resolve or narrow the issues concerning the relief sought by this motion, but were unable to reach a resolution. Counsel for Mr. Walsh has indicated that Mr. Walsh will oppose this motion.

Dated: September 8, 2016

/s/ Alta Ray
Bret A. Cohen (D.C. Bar No. 49637-7)
Alta M. Ray (D.C. Bar No. 1006114)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 542-6000
bacohen@mintz.com
amray@mintz.com

**CERTIFICATION OF SERVICE.**

I, Alta M. Ray, hereby certify that a true and correct copy of foregoing document was filed with the Court via ECF and served via electronic mail and first class mail upon counsel for Plaintiff and for Third Party Joseph Walsh on the date indicated below at the following addresses:

Clifford E. Haines, Esquire
HAINES & ASSOCIATES
Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
chaines@haines-law.com

Brian M. Jorgensen, Esquire
Nikki L. McArthur, Esquire
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
bmjorgensen@jonesday.com
nmcarthur@jonesday.com

Alta M. Ray

Dated: September 8, 2016

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| | : | Case: |
| IN RE SUBPOENA OF NON-PARTY | : | Assigned To: |
| JOE WALSH | : | Assign. Date: |
| | : | Description: |

**[PROPOSED] ORDER**

Upon consideration of hibu Inc.'s Emergency Motion to Compel the Deposition of Joe Walsh on September 16, 2016, the exhibits filed in support thereof, and any opposition thereto, it is hereby **ORDERED** that hibu Inc.'s motion is **GRANTED** and Joe Walsh's deposition shall take place on September 16, 2016 at 9 a.m. at Mintz Levin, 701 Pennsylvania Avenue NW, Washington, D.C. 20004.

**SO ORDERED.**

Dated: September __, 2016

______________________________
United States District Judge